IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYNDA BOOKER,<br>***Plaintiff*** | §<br>§<br>§ | |
| v. | § | CAUSE NO._____ |
| | § | |
| HOUSTON | § | |
| INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| ***Defendant*** | § | JURY DEMANDED ON |
| | § | FACT ISSUES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### LYNDA BOOKER'S ORIGINAL COMPLAINT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To the Honorable Judge of Said Court:

Comes Now Plaintiff Lynda Booker ("Plaintiff" or "Booker"), a 35 year veteran Art Teacher of Houston Independent School District ("HISD") and respected artist filing this her Original Complaint complaining of HISD pursuant to "Title VII" and Title 42 §1981, ; and for cause would show

### JURISDICTION

This court has jurisdiction pursuant to Title 28 §§1331, 1343.

### PARTIES

**Booker is a resident of Harris County, Texas.**

**HISD may be served by process being executed on Interim Superintendent Dr. Grenita Lathan at her place of business**

1

at  her business address, 4400 W. 18th Street, Houston,
Texas, 77092-8501.

## SUMMARY OF CLAIMS

1.      Title 42 § 2000e *et seq* ("Title VII"):

a.      Booker employed was first assigned to (HISD)JP
Henderson Elementary School, as an Art Teacher in 1985,
obtained her Continuing Contract (TEC formal Tenure System
[X5]), left for one year to teach at Aldine ISD, returned to HISD
to be reinstated to her Continuing Contract, and was assignedto
(HISD)Barrick Elementary School, then assigned to
accommodate needs to (HISD)Kashmere High School, then
assigned to accommodate needs to (HISD) Burbank Middle
School, then then assigned to accommodate needs to (HISD)
Key Middle School, then assigned to (HISD) JP Henderson.

b.      After serving at JP Henderson, the Principalship passed
to Principal Barrientos from Principal Garcia.

c.      Perceiving illegal disparate treatment by Principal
Barrientos, Booker filed an internal HISD EEO Claim in 2016 as
well as an EEOC inquiry;  when Principal Barrientos and HISD
seemed to address Booker's complaints, Booker dismissed the
complaints and inquiry, and Barrientos was later separated
from HISD.

d.      Barrientos was replaced by Maria Guerra ("Guerra")as
Principal at JP Henderson for the 2019-2020 school year, and

Guerra started to bully Booker publicly in violation of policy and HISD's EEO office, having been dissolved, Booker made a complaint against Principal Guerra's actions lest they mushroom out of control; the complaint went unaddressed.

e.      Instead, Guerra caused an admittedly favorable observation of Booker by Ms. Flores to be revised and altered into an unsatisfactoryobservation.

f.      In the meantime, Booker had been injured by an unsocialized child (she was kicked in her stomach), and had been injured in an on the job fall, being forced into a Workers Comp claim; however, Booker as a stalwart continued to work as a Teacher except when she needed to seek medical treatment, working with modifications.

g.       In December 2019, Booker filed a Grievance against Principal Guerra and Assessor Flores for the retaliatorily altered observation; the grievance was effectively ignored by HISD, and Booker's professional representative Texas Classroom Teacher's Association ("TCTA") became actively involved and pushed for policy based attention to the grievance.

h.      As a seeming "warning" to Booker, in January 2020, Principal Guerra with the aassistance of a collaborative Teacher, Ms. Sosa, prompted false charges against Booker claiming she had made a female student, "M" (one of Sosa's "homeroom students") cry as the result of criticizing the child's artwork.

3

i.      Booker denied the charges and an investigation resulted in finding the charges to be unsupported by the facts.

j.      Booker's Policy DGBA Grievance against Guerra and Flores was set for hearing in February 2020, and it was determined by Guerra in collaboration with HISD Legal that a "File Review " to terminate Booker would be their surest route to ridding HISD of *the older, Continuing Contract, apparently prone to injury, willing to officially oppose disparate treatment* TEACHER.

k.      Guerra again promyed directly or indirectly or took advantage of a child ("A"), Guatemalan by birth and Spanish dialect, who was said by Guerra to have made claims strikingly similar to "M's" (Ms. Booker made him cry).

l.      Booker was suspended, the usual investigation was commenced by HISD ("If a child says they are hurt, physically or psychologically, then a caring *in loco parentis* authority investigates or inquires.").

m.     Dates were changed by HISD, and the charge against Booker was redesigned  to be les similar to that of "M's" ffrivolous charge, and the administrative File Review was convened by ISD Legal and Guerra to begin the process of Booker's termination.

n.     In violation of Booker's Continuing Contract's notice provision, when HISD had massaged the facts to Terminate Booker, it had overlooked facts, and policies of the entity.

o.     Booker became represented by HFT AFL-CIO in the matter since TCTA was limited to working with Booker on Grievances and not Termination.

p.     HISD dismissed its first notice of Termination, then on June 16, 2020 reissued the notice and an Administrative Hearing was commenced, with a reportedly reliable administrative hearing Officer was selected by HISD to hear the matter in August 2020, and HFT would not file a Title VII Charge of Discrimination for Booker.

q.     Booker, in addition to HFT's problematical representation, filed her [Second] Charge of Discrimination, **#460-2020-05732** on August 31, 2020, for discriminatory and retaliatory events of a continuing nature which had occurred even on March 11, 2020; **Booker upgraded her charge and  provided more than 186 pages of documentation to EEOC and HISD which HISD had provided to her over time**. However, Booker did not produce to EEOC and HISD the reportedly more than 1000 pages of documentation which HISD had to support Booker's termination and had provided to Booker's HFT professional representative.

1.) Booker received her Right to Sue from the Department of Justice on November 6, 2020, whereby Booker was notified that she was to file a civil lawsuit within 90 days of her receipt of that notice.

2.) Booker files this action within the 90 days allocated to her, on January 31, 2021.

r.   **On November 19, 2020**, illegally and out of statutory time, without jurisdiction, HISD rammed through the HISD Board, **Booker's termination**; however, realizing that it had denied Booker her policy rights to a DGBA hearing on her Grievance, scheduled a Level Two hearing on November 20, 2020.

s.   All was done by HISD in violation of various due process principles and policy provisions, and in further retaliation against Booker for having spoken out against HISD's discrimination and retaliation (done at the same time that HISD with the assistance of HFT was itself proclaiming that the State of Texas through TEA was discriminating against HISD and its patrons).

t.   Booker filed her [Third] Charge of Discrimination **#460-2021-00973** for for discriminatory and retaliatory events of a continuing nature which had occurred even on November 19, 2020.

6

1.) Booker received her Right to Sue from the EEOC on January 6, 2020, whereby Booker was notified that she was to file a civil lawsuit within 90 days of her receipt of that notice.

2.) Booker files this action within the 90 days allocated to her, on January 31, 2021.

## HISD's CONTINUING PRACTICE OF TRYING TO DEFRAUD BOOKER OF VARIOUS OF HER HISD POLICY PROTECTIONS

2.      HISD'S Continuing Contract policies in force and effect at all times material hereto are as follow, as annotated: '

**a. (X1) DFAC (LEGAL)**: "An employee may be employed under a probationary contract if the employee voluntarily accepts an assignment and a new professional capacity that requires a different class of certificate under Education Code Chapter 21, Subchapter B than the class of certificate held by the employee in the professional capacity in which the employee was previously employed."; **"This provision does not apply to an employee who is returned by the district to a professional capacity in which the employee was employed by the District before the District employed the employee in the new professional capacity. The employee is entitled to be employed in the original professional**

7

**capacity under the same contractual status as the status held by the employee during the previous employment by the District in that capacity."** [Date issued: 10/15/2012-UPDATE 95]

b. **(X 2) DCB (LOCAL)** "**Categories of Educator Employment Contracts... 2. Continuing contract**: **Teachers issued a continuing contract prior to November 1, 1996, and who are currently employed by the district shall remain on a continuing contract.** Effective November 1, 1996, the district ceased issuing continuing contracts."

**Grandfather Clauses Contracts/Continuing Contracts Retained. Any District employee hired under a continuing contract prior to November 1, 1996, shall remain under a continuing contract as long as the employee remains in the same contractual position** [See also DCC (Legal) and (LOCAL)] Policies relating to employment by educator term contract [see DCB and DFD series] do not apply to employees on continuing contracts.

c. **(X3) DCC (LEGAL) APPLICABILITY**. Each person employed under a continuing contract **is entitled to continuing in the employee's position or a position with the District for future school years without the necessity for annual**

8

**nomination or reappointment**, until such time as the person: 1. Resigns [see DFE]; 2. Retires under the Teacher Retirement System; 3. It is released from employment by the district at the end of the school year because of necessary reduction of personnel [see DFCA]; 5. It is discharged for a reason stated in the teacher's contract that existed on or before September 1, 1995, [see DFD]; or 6. It is returned to probationary status under Education Code 21.106 [see DFAC].

d. **(X4) DCC (LOCAL). EMPLOYMENT PRACTICES CONTINUING CONTRACTS**. As of November 1, 1996, full-time certified teachers who have completed their probationary period shall be employed on term contracts, as authorized by Education Code 21.002 and 21.201. [See DCB (LEGAL) and (LOCAL)].

**Contracts if him to Grandfathered**. **A District employee hired under a continuing contract prior to November 1, 1996, shall remain under a continuing contract as long as the employee remains in the same contractual position.** [See DCC (LEGAL) and DCB (LOCAL)]

3.      The language of the policies included hereinabove are not prospective only.

4.      The first Continuing Contract **"Issued"** to Booker is dated

**February 27, 1989.** (X5)

5**.**     The Second "Continuing Contract "**Given to employee**" was a sham and a nullity by policy in that it was dated <span style="color:red">**May 16, 1997**</span> after the "<span style="color:red">**District ceased issuing continuing contracts on November 1, 1996**</span>".

6.     The pleadings are fraught with facts of HISD's "*tricksterisms*" regarding its processing of the terms and conditions of Booker's employment, but in 2020, HISD failed to adhere to the notice requirements of X5, changed the reasons for the proposed termination, ***Department of Homeland Security v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020),** and not only arbitrarily violated its own policies by having stealthily having eliminated the notice requirements of X5 (Id.) (See, ***Mayor v. Azar*, 973 F.3d 258 (4th Cir. 2020**), but also violated Booker's rights to due process. (See, ***Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250 (Tex. 2019)).**

7.     Booker re-enterd HISD after a year al Aldine ISD, and did so under the protections of X5; HISD argues that Booker waived her statutory and/or policy rights to the benefits of X5, yet shows no express consent or waiver by Booker of those rights. The best HISD

can do is to say that its legal Department in violation of its own policy drafted a Continuing Contract and instead of issuing it to Booker gave it to her all the while knowing as HISD must have known that it was void.

8.     "Justice must satisfy the appearance of justice." HISD has seemingly forgotten both the nature and substance of Justice when dealing with the dwindling rank of older workers who still work under the forms of pre-1996 Continuing Contracts.

## **Prayer**

For these reasons, Booker asks that defendant be cited to appear and answer and, on final trial, Booker be awarded a judgment against defendant for the following: a.Economic and noneconomic damages with prejudgment interest; b.Reasonable andnecessary attorney's fees; c.Declaratory and injunctive relief, temporary and permanent; d.All other relief to which Booker is entitled.

Respectfully Submitted,
*/S/ Larry Watts*
Larry Watts, TBN 20981000,
P.O. Box 2214,
Missouri City, Texas 77459,
Ph. (281) 431-1500,
Fax (877) 797-4055
Wattstrial@gmail.com

ATTORNEY FOR PLAINTIFF

## **<u>VERIFICATION</u>**

I, Larry Watts, verified that the exhibits attached hereto as X1-X6 are true and correct copies of documents provided by HISD to plaintiff Lynda Booker during the course of her employment, either by online, or request by her, or hand delivery, or certified mail. This verification is made subject to the penalty of perjury and based upon my own personal knowledge from inquiry and investigation as attorney for Lynda Booker**.**

*/S/ LARRY WATTS*